## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | |
|---|---|
| NAJAE JORDAN, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | )   Case No. 4:21CV1242 HEA |
| | ) |
| WESLEY BELL, et al., | ) |
| | ) |
| Defendants. | ) |

## OPINION, MEMORANDUM AND ORDER

This matter is before the Court on Defendants Wesley Bell and Christopher Graville's Motion to Dismiss [Doc. No. 9]. Plaintiffs oppose the motion. For the reasons set forth below, the Motion will be granted.

### Background and Facts

On August 11, 2021, Plaintiffs Najae Jordan and Deja Holland filed this civil rights action in the Circuit Court of St. Louis County, Missouri, against Defendants Bell, Graville, the Village of Riverview, the City of Bellefontaine Neighbors, and Police Officers Jason Groves, Jeffrey Lakebrink and Michael Pedroli. Defendants Bell and Graville, sued in their individual capacities, were named in three of the eight counts of Plaintiffs' Petition: Count IV (42 U.S.C. § 1985 Conspiracy to Interfere with Plaintiffs' Civil Rights); Count VII (Abuse of Process); and Count VIII (Malicious Prosecution).

Defendants subsequently removed this action,[1] and Defendants Bell and Graville filed a motion to dismiss the claims against them as alleged in Counts IV, VII, and VIII pursuant to Federal Rule of Civil Procedure 12(b)(6), which Plaintiffs oppose.

Plaintiffs' Petition alleges, in pertinent part:[2]

On August 11, 2016, Plaintiffs Jordan and Holland were walking near their shared apartment located in the Village of Riverview. They had recently gotten off the bus after working their shift at Wal-Mart in Chesterfield. As they were walking on Diamond Drive, Plaintiffs, who are both black females, were detained by Defendants Lakebrink and Groves. Groves demanded identification from Plaintiffs, at which point Jordan began filming the interaction on her smartphone and then, upon being physically threatened by Groves, began backing away. Lakebrink pursued Jordan on foot, while Groves verbally threatened her with mace if she did not stop walking away. After hearing this threat, Jordan ran to her apartment, located at 9903 Diamond Drive. Groves and Lakebrink, along with Holland who had been placed in police custody, walked over to Plaintiffs' apartment building. Around this time Defendant Pedroli arrived on the scene to assist.

---

[1] The Court has original jurisdiction as to Count IV and supplemental jurisdiction as to Counts VII and VIII. 28 U.S.C. §§ 1331 and 1367(a).

[2] For purposes of this Order only, the allegations in the Complaint are taken as true. *McShane Constr. Co., LLC v. Gotham Ins. Co.*, 867 F.3d 923, 927 (8th Cir. 2017). This in no way relieves the parties of the necessary proof thereof in any later proceedings.

Groves, Lakebrink and Pedroli stood outside of Plaintiffs' apartment building and ordered Jordan to exit the locked apartment building and be placed under arrest. Once Jordan opened the apartment door, Lakebrink and Pedroli reached into the building, seized her, violently dragging her outside, slammed her onto the sidewalk, and applied the weight of their bodies via their knees to her back and neck. After handcuffing her, they lifted her by her arms. Holland moved forward to assist Jordan, and Pedroli and Groves forcefully shoved Holland to the ground causing her to temporarily lose consciousness.

Plaintiffs were subsequently arrested and transported to the Riverview Police Station to be booked and processed. During the booking process, Groves threatened Jordan if she failed to cooperate and conducted a full physical search of her, even though she requested a female officer.

Holland was booked, processed, and released by Lakebrink. After her release, Groves coerced Holland into his patrol vehicle against her will and took her back to Plaintiffs' apartment complex. Once they arrived, Groves searched Plaintiffs' apartment without a warrant or consent to recover Jordan's smartphone, which he did not find.

Plaintiffs were charged by Defendant Bell, who was a municipal prosecutor employed by Defendant Riverview at that time, with various municipal ordinance violations, including Resisting Arrest, Failure to Comply, and Assault in the Third

Degree on a Law Enforcement Officer. On August 16, 2016, Attorney Thomas SanFilippo entered his appearance on behalf of Plaintiffs and made his first request for discovery. SanFilippo also sent multiple spoliation/preservation letters via U.S. certified mail to Riverview and Bell outlining their duty to preserve all relevant evidence pertaining to the detention, assault, arrest, and charging of Plaintiffs.

On March 20, 2017, SanFilippo conducted a deposition of Groves, which Bell attended on behalf of Riverview. Groves made several racially charged statements during his deposition, including his testimony that Plaintiffs had been "neanderthalling around" in the area of what he referred to as "Thug University." Groves also revealed, under oath, during his deposition that the area where he conducted the physical search of Jordan was recorded on video.

During the discovery process of the criminal proceedings, SanFilippo requested Bell to provide a copy of all videos of Plaintiffs captured by cameras while they were in custody. However, after Bell had represented that no such video evidence existed in his written answers to said discovery requests, Groves confirmed in his deposition that video recordings existed at one time.

Plaintiffs are of the information and belief that, in spite of Bell's known legal duties to preserve any and all video evidence and his statements to SanFilippo regarding the importance of any and all video evidence, said Riverview police

station video evidence had already been destroyed, allowed to spoil, and/or otherwise had failed to be preserved by Bell and Riverview.

In addition to allowing the spoliation of relevant evidence, throughout the criminal litigation, Bell inexplicably and repeatedly refused to comply with the rules of discovery as outlined in the Missouri Supreme Court Rules governing criminal matters. During the prosecution of Plaintiffs, several motions to compel and/or for sanctions were filed against Riverview, then represented by Bell, due to their lack of compliance with the rules of discovery.

On November 29, 2017, Bell forwarded SanFilippo a proposed Deferral Agreement to defer the prosecution of Plaintiffs. The Deferral Agreement offered to dismiss the ordinance violation charges against Plaintiffs, on the condition that Plaintiffs admit guilt to the charges pending against them and sign a document waiving their right to pursue any civil action against Defendants.

On January 31, 2018, SanFilippo proposed a counteroffer, which mirrored Bell's proposed Deferral Agreement but declined and omitted all nefarious or unethical conditions, such as the Plaintiffs' waiver of all civil liability against Defendants for misconduct.

On February 12, 2018, Bell explicitly rejected this counteroffer and continued to pursue his prosecution of Plaintiffs. The counteroffer was rejected by Bell again even after SanFilippo had tendered a follow-up letter outlining the

5

relevant caselaw and obvious ethical concerns pertaining to the prosecution of the case against Plaintiffs and the Deferral Agreement itself.

On January 23, 2021, a column written by Tony Messenger was published in the St. Louis Post-Dispatch, wherein the practice of dismissing criminal charges in exchange for liability waivers is discussed at length. In the column, Messenger quotes Bell stating that he has "always disapproved" of conditioning the dismissal of criminal charges upon the waiving of civil liability, and that the practice "seems inherently wrong and unethical."

Throughout the prosecution of Plaintiffs in this matter, Defendant Graville participated in the prosecution of the case. Graville made multiple appearances in court and was included on email exchanges between SanFilippo and Bell where the posture and potential disposition of the criminal case was discussed.

Plaintiffs are of the information and belief that Graville ordered the prosecution to continue despite the lack of evidence of criminal conduct by Plaintiffs, the racial animus towards Plaintiffs displayed by Groves, and the unlawful detention, arrest, and assault of Plaintiffs. Plaintiffs are of the information and belief that Graville conspired or directed Bell to present the Deferral Agreement.

As City Attorney for Riverview, Graville's responsibility was to shield Riverview and its agents from civil liability, in contrast to the responsibility of a prosecutor which is to serve the interests of justice.

A criminal prosecution instituted and maintained solely for the purpose of preventing a civil action against a governmental entity and its servants violates the ethical rules governing prosecuting attorneys. The prosecution of municipal ordinance violations was outside the scope of Graville's employment as City Attorney for Riverview. Over the course of the prosecution of Plaintiffs, many of the initial charges were voluntarily dismissed by the prosecuting attorney for Riverview.

Between December 11, 2019 and December 13, 2019, trial by jury was conducted in the cases of *Riverview v. Najae D. Jordan*, Case Number 16SL-MU00855, and *Riverview v. Deja Holland*, Case Number 16SL-MU00859, on charges of Resisting Arrest and Assault of a Law Enforcement Officer. During sworn testimony at the jury trial, and at depositions and a motions hearing, neither Groves or Lakebrink could articulate any reasonable suspicion that Plaintiffs were engaged in criminal activity at the time of Plaintiffs' initial detention, although both have suggested various potential offenses ranging from burglary to narcotics trafficking or prostitution. When pressed for specific factual bases for their

suspicions, Groves and Lakebrink could not provide any specific factual support other than that Diamond Drive was allegedly a "high crime area."

In both cases, the jury returned verdicts of "Not Guilty" on all counts.

Plaintiffs seek damages in the amount of $25,000 and attorneys' fees and costs.

## Standard of Review

Federal Rule of Civil Procedure 8(a) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R .Civ. P. 8(a)(2). If a pleading fails to state a claim upon which relief can be granted, an opposing party may move to dismiss it. *See* Fed. R. Civ. P. 12(b)(6). The purpose of a Rule 12(b)(6) motion to dismiss for failure to state a claim is to test the legal sufficiency of a complaint to eliminate those actions "which are fatally flawed in their legal premises and deigned to fail, thereby sparing the litigants the burden of unnecessary pretrial and trial activity." *Young v. City of St. Charles*, 244 F.3d 623, 627 (8th Cir. 2001). This court "accepts as true the complaint's factual allegations and grants all reasonable inferences to the non-moving party." *Park Irmat Drug Corp. v. Express Scripts Holding Co.*, 911 F.3d 505, 512 (8th Cir. 2018) (citations omitted). A claim is facially plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Bell Atl. Corp. v.*

8

*Twombly*, 550 U.S. 544, 555 (2007), quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). "Where an official's challenged actions are protected by absolute immunity, dismissal under Rule 12(b)(6) is appropriate." *Sample v. City of Woodbury*, 836 F.3d 913, 916 (8th Cir. 2016) (citation omitted).

## Discussion

Defendants Bell and Graville assert that they are entitled to absolute prosecutorial immunity against Plaintiffs' claims of conspiracy (Count IV), abuse of process (Count VII) and malicious prosecution (Count VIII).

"[A]bsolute immunity defeats a suit at the outset, so long as the official's actions were within the scope of the immunity." *Imbler v. Pachtman*, 424 U.S. 409, 419 (1976)). It "protects prosecutors against claims arising from their initiation of a prosecution and presenting a criminal case 'insofar as that conduct is intimately associated with the judicial phase of the criminal process.'" *Sample*, 836 F.3d at 916 (quoting *Burns v. Reed*, 500 U.S. 478, 486 (1991)). In determining whether a prosecutor's particular actions are entitled to absolute immunity, the courts apply a "functional approach," which looks to 'the nature of the function performed, not the identity of the actor who performed it.'" *Buckley v. Fitzsimmons*, 509 U.S. 259, 269 (1993) (quoting *Forrester v. White*, 484 U.S. 219, 229 (1987)). Thus, "[p]rosecutors enjoy absolute immunity in their review of and decisions to charge a violation of the law." *Sample*, 836 F.3d at 916 (citing *Imbler*, 424 U.S. at 420-27).

9

"However, purely administrative or investigative actions that do not relate to the initiation of a prosecution do not qualify for absolute immunity." *Winslow* v. *Smith*, 696 F.3d 716, 739 (8th Cir. 2012) (quoting *Schenk v. Chavis*, 461 F.3d 1043, 1046 (8th Cir. 2006)). For instance, "[w]hen a prosecutor performs the investigative functions normally performed by a detective or police officer," he is not entitled to absolute immunity. *Buckley,* 509 U.S. at 273. There is a distinction between a police officer's initial collection of evidence and a prosecutor's "professional evaluation of the evidence assembled by the police and appropriate preparation for its presentation at trial . . ." *Id*. The latter function is entitled to absolute immunity. *Id.*

Plaintiffs do not contest that a prosecutor is afforded immunity when acting within his prosecutorial function. Rather, Plaintiffs argue both Bell and Graville were acting outside the proper prosecutorial function. As to Bell, Plaintiffs maintain that he was not acting as a prosecutor while reviewing and preparing the case, extending offers and not preserving police department video footage because he was attempting to protect himself, the police officers and Riverview from civil liability. Bell argues he was acting within his prosecutorial function and is entitled to absolute immunity for the acts he performed in his prosecutorial role. The Court agrees.

Prosecutors, like Bell, are entitled to immunity for the decision to bring charges "whether [they have] probable cause or not[.]" *Saterdalen v. Spencer*, 725 F.3d 838, 843 (quoting *Buckley*, 509 U.S. at 274, "The reason that we grant [absolute immunity] for the latter function (malicious prosecution) is that we have found a common-law tradition of immunity for a prosecutor's decision to bring an indictment, whether he has probable cause or not."). Bell's negotiation of plea offers are clearly an essential part of the prosecutorial function. Plaintiffs' claims of improper motive in Bell's performance of prosecutorial functions will also not defeat immunity. *Sample*, 836 F.3d, at 916. "Because the immunity depends upon the functional nature of the prosecutor's activities, allegations of improper motive in the performance of prosecutorial functions will not defeat its protection." *Id.* Absolute immunity "is not defeated by allegations of malice, vindictiveness, or self-interest." *Reasonover v. St. Louis Cty.*, 447 F.3d 569, 580 (8th Cir. 2006). It applies even if the prosecutor's steps to initiate a prosecution are patently improper." *Sample*, 836 F.3d at 916 (citing *Saterdalen*, 725 F.3d at 842).

As to Graville, Plaintiffs argue because he was not appointed as the prosecutor for the Village of Riverview and was acting in his own self-interest, he cannot be afforded absolute immunity. This argument is not availing. In their complaint, Plaintiffs allege that Graville, who was the City Attorney employed by Riverview, participated in the prosecution of the case. For instance, Graville made

11

multiple appearances in court and was included on email exchanges between SanFilippo and Bell regarding offers. Graville's actions stated by Plaintiff relate to the functions of a prosecution. Regarding Graville's motive and/or self-interest, these allegations do not defeat absolute immunity. *Reasonover*, 447 F.3d at 580. Therefore, Graville is also entitled to absolute immunity for the acts he performed in this case, which were conducted in his prosecutorial role.

## Conclusion

Based upon the foregoing analysis, the Motion to Dismiss by Defendant Bell and Defendant Graville is well taken.

Accordingly,

**IT IS HEREBY ORDERED** that the Motion to Dismiss is **GRANTED** as to Wesley Bell and Christopher Graville only [Doc. No. 9]. A separate order of partial dismissal will be entered.

Dated this 15th day of September, 2022.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE